**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MISSOURI CROP, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:15-CV-00024 ERW |
| | ) | |
| CGB DIVERSIFIED SERVICES, INC., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on GemCap Lending I, LLC,'s Motion to Enforce

Settlement Agreement and Request for Sanctions [129] and Motion for Sanctions [120].

## I.    BACKGROUND

### A.    *Procedural History*

Matthew Burgher is the sole owner of Missouri Crop, LLC, a crop insurance sales

business. On March 4, 2015, Burgher and Missouri Crop[1] initiated the underlying lawsuit in state

court against CGB Diversified Crop Insurance Services ("Diversified") and CropUSA Insurance

Agency, Inc., ("CropUSA"), arguing the defendants owed them $434,466.48 in unpaid

commissions for crop insurance policies sold during the 2013 crop year. In their Petition [6],

Plaintiffs alleged Burgher entered into an "Independent Agent Contract" with CropUSA, which

remained in effect for the sale of crop insurance for the 2013 crop year. Under the Independent

Agent Contract, Burgher agreed to sell Diversified crop insurance policies through CropUSA,

one of Diversified's general agents. Diversified removed the action to this Court on April 2,

2015.

---

[1]At various instances hereafter, Burgher and Missouri Crop are referred to as "Plaintiffs."

On July 16, 2015, Diversified filed a crossclaim in interpleader against GemCap Lending I, LLC, ("GemCap"), a third-party asset lending company. Diversified stated GemCap had initiated a lawsuit against Diversified and CropUSA in the United States District Court, Central District of California, in July 2013. The court in that case enjoined Diversified from distributing the funds to any entity, and in August 2014, it dismissed Diversified with prejudice. Following a settlement between GemCap and CropUSA, the court dismissed the remainder of that case without making any determination as to the lawful recipient of the funds with the injunction remaining in effect. Given GemCap and CropUSA's competing claims to the funds, Diversified asked to deposit the $434,466.48 with this Court on April 1, 2016. This Court entered a default judgment against CropUSA and permitted Diversified to deposit the funds into the Court's Registry.

On April 26, 2016, GemCap filed a Motion for Summary Judgment [53], stating its interest in the crop insurance commissions paid by Diversified to CropUSA was senior to that of Plaintiffs', which was based on their subagency agreement with CropUSA. On May 13, 2016, Plaintiffs filed a Motion for Leave to File their First Amended Complaint [57]. This Court granted that motion and denied GemCap's Motion for Summary Judgment as moot. In their First Amended Complaint, Plaintiffs stated Burgher sold Diversified insurance policies as a direct agent of Diversified, rather than as a subagent of CropUSA. Yet, their First Amended Complaint included two noteworthy attachments: the Independent Agent Contract (Exhibit 1) and a document titled "Assignment of Commissions" in which Burgher directed CropUSA to pay all commissions earned by him to Missouri Crop (Exhibit 2). As such, Plaintiffs argued the commissions from all insurance policies Burgher sold during the 2013 crop year were directly owed from Diversified to Plaintiffs.

**B.     Findings of Fact Relevant to GemCap's Pending Motion to Enforce Settlement Agreement and Request for Sanctions [146] and Motion for Sanctions [120]**

During discovery, Plaintiffs produced to GemCap a document titled "Settlement Agreement and Release" that was executed on August 20, 2014 between Diversified and Plaintiffs. The Settlement Agreement and Release indicated Plaintiffs had accepted $300,000 from Diversified in exchange for a full release of "any and all claims, actions, causes of action, rights, liabilities, obligations and demands of every kind and nature, known or unknown, past, present, and future, for any and all claims arising from or relating to the purchase[2] which now or hereafter may exist, whether known and unknown." GemCap also subpoenaed the records of Diversified, regarding the business relationship between Plaintiffs and Diversified for the 2013 crop year. Diversified produced a January 28, 2014 letter from Burgher, on behalf of Missouri Crop, to Diversified, which stated:

> For the 2013 crop year and prior we were working with [CropUSA] as a subagent and they were doing our processing for us. Please be advised that we no longer have any desire to be affiliated with [CropUSA] and that effective with the 2014 crop year (which would include wheat policies sold in the fall of 2013) we desire to be a direct agent of [Diversified]. We have executed what we believe to be all the necessary paperwork in that regard.

GemCap filed a Motion for Sanctions on May 8, 2017 [120], stating Plaintiffs and their counsel had prosecuted this case in bad faith as evidenced by their misrepresenting Plaintiffs' relationship with CropUSA and Diversified in their First Amended Complaint and their nondisclosure of a settlement agreement which indicated Plaintiffs had forfeited any rights they had to the contested funds. GemCap asked this Court to sanction Plaintiffs and their counsel and award GemCap $109,688 for the attorneys' fees and legal fees it incurred by responding to the interpleader action. The motion was set for hearing on June 20, 2017.

---

[2]Diversified had purchased Burgher's book of crop insurance business pursuant to the "Purchase Agreement" entered into by and between Diversified and Plaintiffs.

In May 2017, the parties began discussing settling the case. Ultimately, the parties agreed to split the $434,466.48, with GemCap receiving $389,466.48 and Plaintiffs receiving $45,000. On May 22, 2017, counsel for Plaintiffs provided GemCap with a revised draft of the settlement agreement, which included six proposed changes. On May 23, 2017, counsel for GemCap sent counsel for Plaintiffs an email indicating it accepted all proposed changes and asking to include a clarification to the draft settlement agreement. That same day, counsel for Plaintiffs responded that the clarification was "fine and acceptable." Counsel for GemCap forwarded counsel for Plaintiffs a version of the settlement agreement with all proposed changes. This version was signed by GemCap. However, on June 7, 2017, rather than executing the updated version of the settlement agreement, Plaintiffs executed an earlier version that had two typos and omitted the clarification. The differences between the two signed settlement agreements are as follows.

The first typo, occurring in the first paragraph of the version executed by Plaintiffs, is the omission of the word "commissions":

> WHEREAS, the lawsuit involves claims concerning entitlement to Multi-Peril Crop insurance policy earned by Matthew Burgher and Missouri Crop for the 2013 crop years ("claims");

The typo was revised in the version executed by GemCap:

> WHEREAS, the lawsuit involves claims concerning entitlement to Multi-Peril Crop insurance policy **commissions** earned by Matthew Burgher and Missouri Crop for the 2013 crop years ("claims");

The second typo, also in the first paragraph of the version executed by Plaintiffs, is the omission of the two words "and that":

> WHEREAS, the parties have agreed that GemCap has perfected a senior secured interest in commissions owed by CropUSA to GemCap the deposited funds represent such commissions;

The typo was revised in the version executed by GemCap:

WHEREAS, the Parties have agreed that GemCap has perfected a senior secured interest in commissions owed by CropUSA to GemCap **and that** the deposited funds represent such commissions;

Finally, the version executed by Plaintiffs did not include the clarification requested by GemCap:

Duty To Cooperate. The Parties understand and agree that GemCap has ongoing disputes with other parties and entities over the superiority of its perfected security interest in collateral pledged by Crop USA Insurance Agency, Inc. in connection with GemCap's commercial loan to Crop USA dated November 23, 2011. The Parties further understand and agree that a material condition to this Agreement is Burgher's and Missouri Crop's agreement to provide GemCap with assistance in pursuit of recovery of this collateral, which includes participating in meetings, providing information and documentation to GemCap upon demand, preparing and signing one or more declarations, appearing for depositions and/or legal proceedings, as needed, until all disputes over the collateral have been resolved. Any expenses incurred by Matthew Burgher or Missouri Crop LLC in cooperating with GemCap shall be reimbursed by GemCap to either Mr. Burgher or Missouri Crop.

The clarification was included in the version executed by GemCap:

Duty to Cooperate. The Parties understand and agree that GemCap has ongoing disputes with other parties and entities over the superiority of its perfected security interest in collateral pledged by Crop USA Insurance Agency, Inc. in connection with GemCap's commercial loan to Crop USA dated November 23, 2011. The Parties further understand and agree that a material condition to this Agreement is Burgher's and Missouri Crop's agreement to provide GemCap with assistance in pursuit of recovery of this collateral, which includes participating in meetings, providing information and documentation to GemCap upon demand, preparing and signing one or more declarations, appearing for depositions and/or legal proceedings, as needed, until all disputes over the collateral have been resolved. Any **reasonable travel** expenses (**not legal fees**) incurred by Matthew Burgher or Missouri Crop LLC in cooperating with GemCap **under this Agreement** shall be reimbursed by GemCap to either Mr. Burgher or Missouri Crop.

On June 9, 2017, counsel for GemCap called counsel for Plaintiffs, noting Plaintiffs had executed an "incorrect" version of the settlement agreement. Counsel for Plaintiffs agreed and asked for a new copy of the version signed by GemCap. On June 19, 2017, GemCap filed a Motion to Cancel Hearing on Motion for Sanctions Pending Finalization of Potential Settlement

[126], which this Court granted. In its motion, GemCap asserted the parties had reached an agreement and were in the process of finalizing settlement documents.

During this time, Burgher was in Chapter 13 bankruptcy proceedings. On May 19, 2017, he filed an "Amended Debtor's Motion to Approve Settlement" in the Bankruptcy Court, stating he had reached a settlement agreement whereby he would be rewarded $45,000, subject to the approval of the Bankruptcy Court. On June 12, 2017, the Bankruptcy Court granted his motion.

On June 23, 2017, counsel for Plaintiffs sent a letter to GemCap stating the version signed by GemCap was a "revised" settlement agreement and that his clients refused to sign it. Soon thereafter, counsel for Plaintiffs withdrew from the case. On July 6, 2017, GemCap filed its Motion to Enforce Settlement Agreement and Request for Sanctions [129]. Plaintiffs retained new counsel and filed a Memorandum in Opposition to GemCap's Motion to Enforce Settlement Agreement and Request for Sanctions [146].

## II.   LEGAL STANDARD

Settlement agreements are favored by the courts. *Caleshu v. Merrill Lynch, Pierce, Fenner & Smith*, 737 F.Supp. 1070, 1086 (E.D. Mo. 1990). This Court has the inherent power to enforce a settlement agreement entered into by the parties in a pending case. *BP Prods. N. Am., Inc., v. Wallis Petroleum, L.C.*, No. 406-CV-01110 ERW, 2007 WL 1240261, at *2 (E.D. Mo. Apr. 27, 2007). Under Missouri law, "a motion to enforce settlement is a collateral action which imposes on the party seeking specific performance 'the burden of proving, by clear, convincing and satisfactory evidence, his claim for relief.'" *Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251-52 (8th Cir.1996).

"Basic principles of contract formation govern the existence and enforcement of the alleged settlement." *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006).

A valid settlement agreement must possess the essential elements of a contract, which includes: (1) the involvement of parties who are competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of obligation, and (5) mutuality of agreement. *Id.* A writing is not necessary to have legal validity of a settlement agreement. *Caleshu*, 737 F.Supp. at 1086. Once parties have reached a valid settlement agreement, one party cannot unilaterally rescind it. *Id.*

## III.    DISCUSSION

### A.    *Motion to Enforce Settlement Agreement [129]*

In their Memorandum in Opposition, Plaintiffs argue no binding contract exists because the May 23 version of the settlement agreement with GemCap's proposed changes (the version that was ultimately signed by GemCap) constituted a "counteroffer" that Plaintiffs never accepted. Essentially, Plaintiffs argue there was no mutuality of agreement between the parties.

"Mutuality of agreement requires 'a mutuality of assent by the parties to the terms of the contract,' i.e., a 'meeting of the minds.'" *Id.* In determining whether mutuality of agreement exists, courts should examine "the intentions of the parties as expressed or manifested in their words or acts." *Chaganti*, 470 F.3d at 1221. Specifically, courts should examine whether any existing disagreements are merely technicalities or involve material issues. *See Caleshu*, 737 F. Supp. at 1086. A settlement agreement may still be valid and enforceable even if it does not expressly resolve ancillary issues, and thus the fact "that parties left some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement." *Sherrard v. The Boeing Co.*, No. 4:13-CV-1015-CEJ, No. 4:14-CV-14-CEJ, 2016 WL 3903212, at *2 (E.D. Mo. July 19, 2016) (quoting *Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997)).

It is clear Plaintiffs and GemCap reached a valid and enforceable settlement agreement. Both parties signed nearly identical settlement agreements with the differences amounting to two mere typographical errors and one clarification regarding potential expenses. This Court is not persuaded the two typographical errors in Plaintiffs' signed draft reflect a disagreement between the parties. Likewise, the omission of the clarification regarding GemCap's payment of potential expenses to Plaintiffs reflects a clerical error, rather than any disagreement between the parties. Indeed, Plaintiffs agreed orally to the proposed clarification concerning this section of the contract on May 23, 2017. Even if it were the reflection of a disagreement, it would concern an ancillary, rather than material, issue. As such, Plaintiffs cannot employ this difference between the two versions as a tool to abrogate the otherwise valid settlement agreement.

Plaintiffs also argue the subject matter of this settlement falls under the statute of frauds as a "promise to answer for the debts of another" and claim this settlement is invalid because it does not adhere to the statute's writing requirement. *See* RSMo, § 432.010. This argument fails for several reasons. First, Plaintiffs misinterpret the part of the statute of frauds they allege is pertinent to this case. Indeed, promises that are original do not fall under the statute of frauds. *Garland Co., Inc. v. Roofco Co.*, 809 F.2d 546, 547 (8th Cir. 1987). A promise is considered to be original if it "is founded upon a new and independent consideration moving to the promisor and beneficial to him, and which is the motive therefor." *Id.* (quoting, *Carvitto v. Ryle*, 495 S.W.2d 109, 261 (Mo. App. 1973). The agreement between Plaintiffs and GemCap constitutes an original promise to settle a case involving their alleged competing interests in funds. Plaintiffs' motivations for settling this case are wholly independent of any interest in settling any debt owed by CropUSA, the debtor for which Plaintiffs allege they are answering. Noteworthy is the Motion for Sanctions [120] that was pending against Plaintiffs, which GemCap stated it would

withdraw if a settlement agreement was reached. As such, this matter simply does not fall under the purview of the statute of frauds.

Second, even if it were to fall under the statute of frauds, the writing requirement under section 432.010 only states the writing must contain all of the essential terms of the contract, including "the parties and the subject matter; the consideration and the price; and the promises exchanged by the parties." *Vess Beverages, Inc. v. Paddington Corp.*, 886 F.2d 208, 213 (8th Cir. 1989). This requirement is not only satisfied by a single document, but may be satisfied by the combination of a series of writings. *Id.* "The signature may take many forms and be located anywhere in the writing, so long as it conveys an intention to authenticate the writing." *Id.* The signature may be located anywhere in the writing, but in order to satisfy the statute of frauds, it must convey an intention by the party to authenticate the writing. *Id.* "Whether a particular 'signature' was intended to authenticate a document is a question of fact." *Id.* As this Court previously stated, the settlement agreement executed by Plaintiffs reflects an intention by Plaintiffs to be bound by the essential terms of the underlying contract. This version, combined with the version executed by GemCap and the chains of emails between the parties, satisfies the statute of frauds' writing requirement.

Finding the parties entered a valid and enforceable contract, this Court grants GemCap's request for an order to enforce the parties' settlement agreement in its Motion [129].

### B.    *Motions for Sanctions*

GemCap has two pending requests for sanctions against Plaintiffs under Rule 11 of the Federal Rules of Civil Procedure: its Motion for Sanctions [120] filed on May 8, 2017 and its Request for Sanctions [129] filed on July 6, 2017. This Court will address these motions in chronological order. Rule 11 imposes a duty on represented parties who sign papers or pleadings

to conduct a reasonable inquiry of the factual and legal basis before filing such documents. *Bus. Guidelines, Inc. v. Chromatic Comms. Enters.*, 498 U.S. 533, 533 (1991); *see also O'Connell Champion Int'l Corp.*, 812 F.2d 393, 394 (8th Cir. 1987) (holding the appropriate standard is one of objective reasonableness, not subjective bad faith). Sanctions may be imposed on parties that have filed a claim having no basis in fact. *Franklin v. Pinnacle Entm't, Inc.*, 289 F.R.D. 278, 285 (E.D. Mo. 2012) (citing *MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 625 (8th Cir. 2003)). "The main objective of the rule is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses." *Bus. Guidelines*, 498 U.S. at 553.

As indicated in this Court's Findings of Fact, it is clear Burgher, through Missouri Crop, acted as a subagent of CropUSA, rather than as a direct agent of Diversified, for the 2013 crop year. It is also clear Plaintiffs were aware of the nature of their relationship with CropUSA and Diversified. However, in their First Amended Complaint, Plaintiffs allege Burgher was a direct agent of Diversified and had no relationship with CropUSA during the 2013 crop year. Such an assertion is undeniably factually contrary to both Plaintiffs' initial position and the attachments Plaintiffs include in their First Amended Complaint. Accordingly, this Court finds Plaintiffs violated Rule 11 by misrepresenting their relationship with Diversified and CropUSA in their First Amended Complaint.

When a district court determines sanctions should be imposed, it has wide discretion in determining what sanctions are appropriate. However, courts should keep in mind the primary purpose of Rule 11 and should implement sanctions "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2). This Court has previously held "courts should select the least severe measure necessary to vindicate Rule 11's primary purpose of deterrence." *Franklin*, 289 F.R.D. at 288 (citing 5A Charles Alan

Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1336 (2d ed. Supp. 1996)).

In its Motion for Sanctions [120], GemCap asked this Court to award attorneys' fees and legal expenses for all legal fees it incurred by litigating this interpleader action and alleges it has incurred $109,688 since Diversified filed its crossclaim in interpleader. However, this Court finds the Rule 11 violation occurred when Plaintiffs filed their Motion for Leave to File First Amended Complaint [57] on May 13, 2016,[3] and it would be inappropriate to award GemCap for expenses occurring before the date of the violation. Similarly, GemCap has been forced to continue to litigate this case well beyond May 8, 2017, the date the Motion for Sanctions [120] was filed, because Plaintiffs refused to honor the settlement agreement reached in May/June 2017. Thus, GemCap should provide this Court with an accurate and detailed accounting of the attorneys' fees and legal expenses it has incurred in this case from May 13, 2016 to date. This Court will then review the accounting and make a determination as to the amount of legal fees and attorneys' fees owed by Plaintiffs.

In GemCap's Request for Sanctions [129], it asks the Court to award it the attorneys' fees and legal expenses it has incurred as a result of Plaintiffs' "improper attempt to avoid the settlement agreement." In light of its determination on GemCap's Motion for Sanctions [120] and request for an updated accounting by GemCap, this Court finds any relief it could grant GemCap under its Request for Sanctions [129] would be duplicative. Thus, the Request for Sanctions [129] is moot.

Accordingly,

**IT IS HEREBY ORDERED** GemCap's Motion to Enforce Settlement Agreement and Request for Sanctions [129] is **GRANTED in part and DENIED in part**.

---

[3] Plaintiffs' first misrepresentation concerning their relationship with CropUSA and Diversified occurs in their Motion to File First Amended Complaint [57].

**IT IS FURTHER ORDERED** GemCap's Motion for Sanctions [120] is **GRANTED in part and DENIED in part**. GemCap shall provide this Court with an updated detailed accounting of the legal fees and attorneys' fees it has incurred since May 13, 2016, by no later than December 29, 2017.

So Ordered this 18th day of December, 2017.

_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**